UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**SCANNED**

Case No. 07-60492-CIV-COHN/SNOW

SHENANDOAH CHIROPRACTIC, P.A.
d/b/a SHENANDOAH CHIROPRACTIC
CENTER, individually and on behalf of
others similarly situated,

       Plaintiff,

v.

NATIONAL SPECIALTY INSURANCE
COMPANY, a Texas corporation,

       Defendant.
_____/

### ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THE CLASS ACTION COMPLAINT IN PART

**THIS CAUSE** is before the Court upon Defendant National Specialty Insurance Company's Motion to Dismiss the First Amended Class Action Complaint [DE 43]. The Court has considered the Motion, Plaintiff's Opposition [DE 44], Defendant's Reply [DE 45], and the record, and is otherwise fully advised in the premises.

**I.    INTRODUCTION**

Plaintiff Shenandoah Chiropractic brought this amended class action complaint against Defendant National Specialty Insurance Company, alleging that Defendant breached its insurance contract by using a computer program that caps reimbursement amounts at an undisclosed, predetermined percentile of the charge submitted to exclude a portion of otherwise covered claims. Plaintiff also seeks a declaratory judgment that this method of evaluating the reasonableness of submitted charges is in violation of the standard insurance contract that Defendant enters into with its insureds.

Defendant filed the instant Motion to Dismiss, challenging Count II of the Complaint as well as the class allegations in Count I of the Complaint

## II. LEGAL STANDARD FOR MOTION TO DISMISS

Until the recent Supreme Court decision in Bell Atlantic Corp. v. Twombly, 550 U.S. —, 127 S.Ct. 1955 (2007), courts routinely followed the rule that, "a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Marsh v. Butler County, 268 F.3d 1014, 1022 (11th Cir. 2001). However, pursuant to Twombly, to survive a motion to dismiss, a complaint must now contain factual allegations which are "enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." 127 S. Ct. at 1965. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1964-65. Taking the facts as true, a court may grant a motion to dismiss when, "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).

## III. ANALYSIS

Defendant addresses each claim in the Complaint separately in its Motion to Dismiss. First, Defendant argues that Count 2 of the Complaint, the declaratory

2

judgment claim, should be dismissed in its entirety. Second, Defendant argues that the class allegations, as applied to Count I of the Complaint, the breach of contract claim, should be dismissed or stricken. The Court considers each argument in turn.

### A.     Declaratory Relief Claim

In Count II of the Complaint, Plaintiff seeks a declaratory judgment against the Defendant declaring essentially two things: 1) that the relevant policy language regarding medical payments or personal injury protection is ambiguous and should be construed in favor of coverage, and 2) that the policy did not reserve to the Defendant the right to cap auto medical payments by application of undisclosed re-pricing percentiles, cost-containment fee schedules, or other "silent HMO" or "managed-care" type health cost controls without disclosure. Essentially, to use the phrasing of Plaintiff's Response to the instant Motion, "Plaintiff alleges that the common method used by Defendant to cap reimbursement of all reasonable charges, for all of its insureds (i.e. the "Code 01" reduction), is an improper breach of Defendant's standardized insurance contract." (Response, p. 13-14 [DE 44].)

However, contrary to Plaintiff's arguments, the Florida Second District Court of Appeals in State Farm Mut. Auto. Ins. Co. v. Sestile addressed the precise question of whether this type of declaratory relief could be given, and concluded that it could not. 821 So.2d 1244 (Fla. 2d DCA 2002). In Sestile, the plaintiffs sought a declaratory judgment finding that the insurance company's use of a computer-generated database to determine the reasonableness of medical bills violated the statute and the insurance contract. Id. at 1245. The court concluded first that because the word "reasonable" was not defined in the policy and was a common word, it should be construed in its

ordinary sense. Id. at 1245-46. Furthermore, the court concluded that "it is not a court's function to determine, across the board, that an insurer's internal method of gauging reasonableness does or does not comply with the statute," and reversed the trial court's entry of declaratory judgment. Id. at 1246.

As the Plaintiff in the instant case articulates, it is seeking a declaratory judgment as to whether or not the insurer's method of determining reasonableness violates the language in the contract. This is exactly the sort of determination that the Sestile court held was inappropriate for across-the-board declaratory relief, because the fact finder must, on a case by case basis, construe the term "reasonable" and determine whether or not the insurer's evaluation of the bills submitted fits the definition of "reasonable". In light of the clear and unambiguous holding in Sestile on this issue of substantive state law, this Court concludes that declaratory relief is not the appropriate remedy. Therefore, Defendant's Motion to Dismiss as to Count II of the Complaint is granted.

B. **Class Action Allegations**

Defendant also argues, for the first time in its Reply,[1] that the demand letter sent by Plaintiff pursuant to the PIP statute requirements, is insufficient to satisfy the demand letter requirement for each member of the putative class.[2] Plaintiff makes two

---

[1] Arguments may not normally be made for the first time in a Reply brief. However, to alleviate any potential prejudice to the Plaintiff, the Court granted leave for Plaintiff to file a Surreply, and so has had the benefit of briefing from each party on this issue.

[2] Defendant also argues in its Motion to Dismiss that the breach of contract claim is not suitable for relief on a class-wide basis and that Plaintiff lacks standing to represent a class that includes med-pay claimants as well as PIP claimants. Because the demand letter issue is dispositive as to the class allegations, the Court need not consider these additional arguments.

arguments in response in its Surreply: first, that the demand letter requirement is procedural, not substantive, and should not be applied in federal court, and second, that even if the requirement is applied in federal court, the demand letter sent by the lead plaintiff satisfies the requirement for the entire class. Because both arguments appear to present issues of first impression in this Circuit, the Court first considers the legislative history behind the PIP statute's pre-suit notice requirement, then considers each of the Plaintiff's arguments in turn.

### 1) *Background and Legislative History*

The pre-suit demand letter requirement was added to the Florida PIP statute in 2001, following a Statewide Grand Jury Report on Insurance Fraud Related to Personal Injury Protection. In this Report, the Fifteenth Statewide Grand Jury examined the issue of PIP fraud, and concluded that fraud and abuse in the area of PIP coverage was widespread and undermining the purposes of the PIP statute. (Statewide Grand Jury Report on Insurance Fraud Related to Personal Injury Protection, Florida Supreme Court Case No. 95,746.)[3] The Grand Jury was concerned about the practice of patient solicitation and brokering by professional solicitors, known as "runners," working alongside lawyers and medical professionals, resulting in "phony or inflated billing, unnecessary or inappropriate diagnostic testing, and trumped up lawsuits." (Id.)

Based on the findings and recommendations of the statewide grand jury, the Florida Legislature made a number of amendments and additions to the PIP statute

---

[3] *Available at:* http://myfloridalegal.com/__85256CC5006DFCC3.nsf/0/9AB243305303A0E085256CCA005B8E2E?Open&Highlight=0,statewide,grand,jury,report,pip,fraud.

during the 2001 session in Senate Bill # 1092, among them the addition of a pre-suit notice requirement. The Senate Staff Analysis and Economic Impact Statement for CS/SB 1092,[4] in explaining the need for the amendments, noted the Grand Jury's finding that "doctors and chiropractors who engage in patient brokering and solicitation generally have relationships with one or more lawyers who file suit on the 31st day, if the claim is not paid." (Id.) The bill was subsequently passed by the Legislature, and included a requirement that written notice of intent to initiate litigation must be provided to the insurer as a condition precedent filing suit for an overdue claim, but limited this requirement only to claims not greater than 45 days overdue.

However, the Legislature remained concerned about fraud and abuse in the PIP insurance area, assembling a Select Committee on Automobile Insurance/PIP Reform in December 2002. The report and recommendations of that committee[5] were submitted to the Legislature in March 2003, and included various suggestions for further amendments to the PIP statute. The Committee concluded that the 2001 reforms, including the pre-suit demand letter requirement, "did not go far enough in attacking the problems of fraud and abuse occurring within the PIP system." (Id. at p. 2.) The Committee recommended, among other things, expanding the provisions of the pre-suit demand letter requirement, making them applicable to all PIP disputes and increasing the time for insurers to respond to the letter. (Id. at p. 9.) The Legislature

---

[4] *Available at*: http://www.flsenate.gov/session/index.cfm?BI_Mode=ViewBillInfo&Mode=Bills&SubMenu=1&Year=2001&billnum=1092.

[5] *Available at*: http://www.flsenate.gov/data/committees/senate/bi/PIP_FinalReport.pdf.

acted on these recommendations, considering and passing Senate Bill # 32 during the 2003 session. This bill, in accordance with the Committee's recommendations, expanded the pre-suit demand letter provision by making it applicable to all actions under the PIP statute and increasing the time to fifteen calendar days within which an insurer may respond to the demand letter. The Senate Staff Analysis and Economic Impact Statement for CS/SB 32-A[6] noted, in evaluating the private sector impact, that "litigation costs could be reduced due to the provisions in the bill which broaden the application of the presuit demand letter . . . Parties could settle many PIP disputes rather than file lawsuits, thus reducing the amount of court costs and attorney's fees." (p. 20.)

The legislative history makes clear the motivations behind the Florida Legislature's addition of a pre-suit notice requirement to the PIP statute. Although the Legislature appears to have considered the beneficial effect of promoting settlement, and thus reducing litigation costs, this Court concludes that the primary purpose behind the amendments that added, and subsequently strengthened, the pre-suit demand letter requirement was preventing fraud.

### 2)   *Procedural vs. Substantive*

The question of whether the PIP statute's demand letter requirement is procedural or substantive appears to be a matter of first impression in this Circuit. Plaintiff cites to precedent from the Seventh Circuit in support of its argument that the requirement is procedural, and thus, should not be applied in federal court. In <u>Mace v.</u>

---

[6] *Available at*: http://www.flsenate.gov/session/index.cfm?BI_Mode=ViewBillInfo&Mode=Bills&SubMenu=1&Year=2003A&billnum=32.

Van Ru Credit Corporation, the Seventh Circuit held that the notice provision of the Wisconsin Consumer Act, which requires thirty days' notice prior to commencement of an action, was inapplicable. 109 F.3d 338, 346 (7th Cir. 1997). The court based its holding on the rule set out by the Supreme Court in Hanna v. Plumer, which held that when a state procedural rule conflicts with a Federal Rule of Civil Procedure, the federal court must apply the federal rule. See 380 U.S. 460 (1965). The Mace court reasoned that the WCA's notice provision conflicts with Federal Rule of Civil Procedure 23, which contains no notice provision, and was thus inapplicable in federal court. Furthermore, the court explained:

> But, more fundamentally, the notice provision of the WCA does not grant or deny a substantive right (the right to sue under the WCA), as the district court found. Rather, it affects the period within which that right can be exercised. If the purpose of the WCA's notice requirement is, as argued by the defendants, to prevent a suit from ever being filed (by encouraging the parties to reach an agreement extra-judicially), such a notice requirement is not substantive . . . Whether the start of Mace's lawsuit was delayed by thirty days (under the WCA) or not at all (under Rule 23) is a matter of procedure, not substance. The application of Rule 23 does not abridge, enlarge or modify any substantive right.

109 F.3d at 346. Although considering the reasoning set out by the Mace court, this Court cannot reach the same conclusion on the facts and law of the instant case. The Florida PIP statute states that "as a condition precedent to filing any action for benefits under this section, the insurer must be provided with written notice of an intent to initiate litigation." Fla. Stat. § 627.736 (11)(a). This provision goes on to specify particular information that must be included in this notice, including the name of the insured, a copy of the assignment of rights, the claim number or policy number, the name of the medical provider, and an itemized statement specifying the exact amount, date of

treatment, service or accommodation, and the type of benefit claimed to be due. Fla. Stat. § 627.736 (11)(b). This very specific notice requirement does not simply specify the time period in which suit may be filed, but rather clearly establishes a condition precedent to filing suit, and the failure to comply with this condition precedent eliminates the availability of a remedy. Furthermore, according to the legislative history, the addition of a pre-suit notice requirement to the PIP statute was part of a larger effort to prevent fraud and "trumped up lawsuits." The purpose of this provision was not merely to encourage settlement, as in Mace, it was to achieve a larger and more substantive legislative goal. Thus, this Court concludes that the Florida PIP statute's notice requirement is substantive, and must be applied in this action.

### 3)   *Adequacy of the Lead Plaintiff's Demand Letter*

Plaintiff next argues that the demand letter sent by the lead plaintiff in this matter, Shenandoah Chiropractic, is adequate to satisfy the demand letter requirement for all members of the putative class. This question of law also appears to be a matter of first impression in this Circuit. Plaintiff argues that notice by the lead plaintiff is sufficient, and points to the Florida Third District Court of Appeal's opinion in Latman v. Costa Cruise Lines in support of its position. See 758 So.2d 699 (Fla. 3d DCA 2000). In Latman, the court found that the notice requirement contained in the passenger ticket, a contractual limitation, would be satisfied for the class by the compliance of the lead class plaintiffs. Id. at 704. However, the notice requirement in Latman was created by a contractual provision, not by statute, as in the instant case.

In support of the contrary position, Defendant cites to a state trial court order, in which the circuit judge concluded that the lead plaintiff in a class action had not

9

satisfied the PIP demand letter requirement on behalf of the entire class because the demand letter was sent only on behalf of himself. Flaxman v. Government Employees Ins. Co., 04-8732 (09) (Fla. 17th Judicial Circuit, May 8, 2006) (filed as Exhibit B to [DE 45]). The judge in also concluded that had the plaintiff sent a demand letter on behalf of himself and "all other similarly situated," then the demand letter requirement might be satisfied.[7] Id. This order does directly address the notice requirements of the PIP statute in a class action context, but it has no binding authority on this Court and provides no additional support for the conclusion that a class-wide demand letter cannot satisfy the pre-suit notice requirement.

The Court finds most instructive the approach of the Fifth Circuit in a case involving a state statute with a similar notice requirement. See Chevron USA, Inc. v. Vermilion Parish Sch. Bd., 377 F.3d 459 (5th Cir. 2004). Although the Louisiana Mineral Code is undoubtedly different in substance from the Florida PIP statute, it contains a very similar notice requirement. Louisiana Mineral Code Article 137 provides: "If a mineral lessor seeks relief for the failure of his lessee to make timely or proper payment of royalties, he must give his lessee written notice of such failure as a prerequisite to a judicial demand for damages or dissolution of the lease." The Official Comment to this statutory provision states that "it is the intent of [Mineral Code] Articles

---

[7] The demand letter sent in the instant case was sent on behalf of Shenandoah Chiropractic only, with no mention of a class-wide demand for relief. However, Plaintiff requests that if the Court finds this demand letter to be inadequate, that the case be stayed and the Plaintiff given the opportunity to send a class-wide demand letter to the Defendant. Thus, the Court must consider whether even a class-wide demand letter could satisfy the requirements of the statute in order to evaluate whether such a remedy would be appropriate.

137-141 to provide lessors with a meaningful remedy while simultaneously giving operators who have made substantial investments in producing properties the security of title which the nature and size of their investment deserves." LSA - R.S. 31:137, Official Comment (*cited in* Chevron USA, 377 F.3d at 463). Interpreting this statutory provision, along with the purpose of the provision as articulated in the Official Comment, the Fifth Circuit concluded that "permitting the demand to be made on a class basis, especially in a case such as this, would deprive the lessee of any real ability to respond within the relatively short time period allowed and upset the balance of rights between lessor and lessee carefully established by the Louisiana Legislature in Mineral Code Articles 137 to 141." Chevron USA, 377 F.3d at 463.

In reaching its conclusion, the Fifth Circuit considered the various practical questions that would be raised by allowing class-wide notice, and concluded that they were not answered in the statute. Id. at 464. For example, the court questioned whether the putative class representatives have any legal authority to make demands under the Mineral Code on behalf of lessors who do not know that demand is being made on their behalf. Id. It also questioned to whom the lessees should respond when confronted with a class notice—would timely response to the class representative protect the lessee from owing statutory penalties to the individual class members who do not receive a response? Id. And if the lessee should elect to pay the royalties due, to whom should the payments be made? Id. The court described these unanswered questions that would arise out of allowing class notification as "a significant consideration" leading it to conclude that class notice would not satisfy the requirements of the statute.

Like the Louisiana Mineral Code, the Florida PIP statute's notice requirement provides a statutorily prescribed procedure by which a medical provider must submit a demand letter with considerable specificity and accompanying documentation, and to which the insurer must respond by paying the claim in full within a specified period of time or face legal action. The PIP statute is actually considerably more detailed in its notice requirements than the Louisiana Mineral Code, and requires that the notice include the name of the insured, a copy of the assignment of rights, the claim number or policy number, the name of the medical provider, and an itemized statement specifying the exact amount, date of treatment, service or accommodation, and the type of benefit claimed to be due. Fla. Stat. § 627.736 (11)(b). This Court, like the Fifth Circuit, can see the significant practical issues that would arise from allowing class notice when the statute contains clear requirements as to what the notice must contain. If unnamed class members are, by definition, too numerous for joinder to be practicable, then how could any class-wide notice letter provide the detailed information about each claim that is required by the statute? And further, if a more generalized class-wide notice were allowed, how, and to whom, could the insurer ever respond in the manner contemplated by the statute? The Court sees no way that these questions could be answered in a way that would allow a class-wide notice letter to fulfill the intent and specific requirements of the pre-suit notice provision.

This Court concludes that allowing class notice would, in effect, eliminate the carefully crafted and detailed notice requirement set out in the Florida PIP statute. The legislative history behind this statutory provision clearly indicates that the Florida Legislature was confronting the difficult problem of fraud in the PIP insurance system

and made a reasoned choice to add the pre-suit notice requirement. Furthermore, when considering the requirement two years later, the Legislature chose not only to retain the requirement, but to strengthen it. This Court simply may not ignore this provision and the underlying legislative intent. Accordingly, the Court concludes that, as a matter of law, no notice letter sent on behalf of the putative class in this case could be legally sufficient, and the class allegations of the Amended Complaint shall be stricken.

IV.  **CONCLUSION**

In accordance with the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant National Specialty Insurance Company's Motion to Dismiss the First Amended Class Action Complaint [DE 43] is **GRANTED**.

2. Count II of the Amended Complaint, the claim for declaratory relief, is **DISMISSED with prejudice**.

3. The class action allegations pertaining to Count I of the Amended Complaint, the claim for breach of contract, are **STRICKEN**.

4. Plaintiff Shenandoah Chiropractic's individual claim for Breach of Contract, as set out in Count I of the Amended Complaint, remains.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 3rd day of December, 2007.

JAMES I. COHN
United States District Judge

Copies provided to:

Counsel of record